# EXHIBIT 3



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Claimant

B.L. Sheehy

First Affidavit

Submitted Date:13/10/2020 14:18

Sworn 13 October 2020

Filed Date:13/10/2020 14:18

Filed 13 October 2020

Fees Paid:274.20

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**
**CLAIM NO. BVIHC (COM) 2020/**
**IN THE MATTER OF THE BUSINESS COMPANIES ACT, 2004**
**BETWEEN:**

**IsZo CAPITAL LP**

<u>Claimant</u>

-v-

**(1)  NAM TAI PROPERTY INC.**
**(a company incorporated in the British Virgin Islands)**

**(2)  GREATER SAIL LIMITED**
**(a company incorporated in the British Virgin Islands)**

**(3)  WEST RIDGE INVESTMENT COMPANY LIMITED**
**(a company incorporated in Hong Kong)**

<u>Defendants</u>
_____

**AFFIDAVIT OF BRIAN L. SHEEHY**
_____

I, **Brian L. Sheehy**, of 590 Madison Avenue, 21st Floor, New York, New York 10022, **MAKE OATH** and **SAY** as follows:

**A.    INTRODUCTION**

1    I am the Managing Member of the general partner of the Claimant, IsZo Capital LP ("**IsZo**"), and the President and sole director of IsZo's investment manager.

2    I have investment experience across a broad range of industries and experience with matters of capital allocation, corporate governance and investor communications. I currently serve as the President and sole director of IsZo Capital Management LP, an investment firm based in New York. I also currently serve as a director of Cryo-Cell International, Inc., the world's first cord blood bank. I previously served as a co-founder and managing member of Black Horse Capital Management

LLC, an investment management firm. I earned my B.A. in Biochemistry and Environmental Science from the University of California, Berkeley, M.A. from University of Exeter and M.D. from New York Medical College. I am also a Chartered Financial Analyst.

3      Save as otherwise indicated, the facts and matters deposed to in this Affidavit are derived from my own personal knowledge and from my review of relevant documents and information concerning Nam Tai Property Inc. (the "**Company**"). Such information is true to the best of my knowledge and belief.  Where facts and matters are not within my own knowledge, the source of information is stated, and the facts and matters are true to the best of my information and belief.

4      Exhibited to me at the time of swearing this Affidavit and marked "**BLS-1**" is a bundle of true copy documents referred to in this Affidavit.  Any reference to a page number in this Affidavit is a reference to the corresponding page number in the exhibit BLS-1 (save where otherwise stated).

5      I make this Affidavit in support of a Notice of Application filed on 13 October 2020 for an order preserving the position pending the trial of these proceedings which IsZo seeks to be expedited, inspection of company records and leave to serve the Third Defendant out of the jurisdiction.

6      This application is made without notice to the Defendants because the Company has already taken wrongful action in response to a requisition to hold a members' meeting to change the board of the Company.  Rather than respond to the requisition the Company purported to enter into a private placement of shares that if it were valid has significantly affected the balance of voting of the members to preserve the present board.  Accordingly I believe that if the Defendants were given notice of this application then they might take further wrongful action, including action in order to render nugatory relief ordered by this Court.

## B.      BACKGROUND

*The Parties*

7      The Company is a company incorporated in the British Virgin Islands ("**BVI**") with its registered office at Kingston Chambers, P.O. Box 173, Road Town, Tortola, VG1110, BVI [**BLS-1/570**].

8       The Company is listed on the New York Stock Exchange. The Company is a real estate developer and operator, mainly conducting business in The People's Republic of China.  Its main land resources are located in the Guangdong-Hong Kong-Macao Greater Bay Area and Wuxi, China, and it plans to develop three plots in Shenzhen into Nam Tai Inno Park, Nam Tai Technology Center and Nam Tai Inno Valley.

9       The Claimant, IsZo, is a limited partnership formed under the laws of the State of Delaware. Its general partner is IsZo Capital GP LLC, a limited liability company formed under the laws of the State of Delaware.  IsZo is the owner of 3,892,385 shares in the Company (the "**Shares**"), including 1,000 Shares held in record name on the Company's register, constituting approximately 9.9% of the Shares outstanding (prior to the disputed placement). To be precise, at the time that the Requisition (as defined below) was delivered, on 11 September 2020, there were 38,935,000 Shares outstanding based on a public filing made by the Company on 24 July 2020. A public filing made by the Company on 5 October 2020 indicated there were 39,197,991 Shares outstanding (as of 2 October 2020). After the Purported Private Placement (as defined below) of 5 October 2020, there would be 57,852,576 Shares outstanding.

10      Kaisa Group Holdings Limited ("**Kaisa**") is part of Kaisa Group, whose business includes real estate development and urban renewal.  Kaisa is incorporated in the Cayman Islands [**BLS-1/580**]. Kaisa has reported in its U.S. Securities and Exchange Commission ("**SEC**") filings as having shared dispositive power over 9,371,703 Shares in the Company, being approximately 23.9% of the shares in the Company (again, not taking account of the disputed placement).

11      Kaisa's shares are listed on the Hong Kong Stock Exchange [**BLS-1/564**]. It has a market capitalisation of HK$3.1 billion (approximately US$0.4 billion).  In 2015 and 2016 there were reports that its auditors PwC had resigned, that it had filed for Chapter 15 bankruptcy in the US and of a hidden off-balance sheet debt of US$10.4 billion [**BLS-1/1-11**].

12      Greater Sail Limited ("**Greater Sail**") is a company incorporated in the BVI with its registered office at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI [**BLS-1/576**].  Greater Sail is wholly owned by Kaisa, and reported having shared dispositive power (with Kaisa) over 9,371,703 Shares in the Company (again, not taking account of the disputed placement).  Greater Sail purports to have

purchased 16,051,219 shares in the Company pursuant to the disputed placement, under the terms of a Securities Purchase Agreement dated 5 October 2020.  These shares would constitute approximately 27.7% of the shares in the Company on a post-issuance basis, and give Kaisa and Greater Sail aggregate ownership of 25,422,922 Shares post-issuance, representing approximately 43.9% of the outstanding Shares.

13    West Ridge Investment Company Limited ("**West Ridge**") is a company incorporated in Hong Kong with its registered office at 22/F Li Po Chun Chambers, 189 Des Voeux RD Central, Honk Kong [**BLS-1/578**].  Although West Ridge is not a part of the Kaisa group of companies, it appears to have some connection with it: IsZo has identified from public information that West Ridge's controlling shareholder, Haitong Securities Co Ltd [**BLS-1/33**], is also the ultimate parent company of Haitong International Securities Co Ltd, which served as a joint book runner and lead manager in relation to the spinoff of Kaisa's property management business (Kaisa Property Holdings Ltd) and also served as the placing agent for Kaisa's issuance of US$100 million 10.5% convertible bonds due 2021 [**BLS-1/35-36**].

14    According to the SEC filing at **BLS-1/468-470**, West Ridge purported to purchase 2,603,366 shares in the Company on 5 October 2020, which would comprise 4.5% of the shares in the Company.

_The Share Capital of the Company_

15    According to Exhibit 99.2 of the Company's Form 6-K filed on 5 October 2020 [**BLS-1/472-504**], there were 39,197,991 Shares outstanding as of the close of business on the business day immediately prior to 5 October 2020 (i.e. on Friday, 2 October 2020). On 5 October 2020, the Company purported to complete a private placement of its common shares with Greater Sail and West Ridge. As a result of this placement, the proportion of the Company's shares under the control of Kaisa (including through Greater Sail) increased from 23.9% to 43.9%. The shares purportedly acquired by West Ridge amounted to 4.5% of the total. Combined, the shareholdings of Kaisa /Greater Sail and West Ridge rose to (at least) 48.4% of the total as a result of the purported placement. The circumstances of the share issue are described in section D below.

*The share capital history*

16    Kaisa, through its subsidiary Greater Sail, originally acquired an interest in the
Company in about August 2017 (the agreement in relation to the acquisition was
entered into on 11 July 2017) [**BLS-1/12-16**], when Greater Sail acquired 6,504,355
shares in the Company, representing 17.7% of its share capital at the time (the
"**Acquisition**"). Pursuant to the Acquisition, the parties thereto disclosed that they
intended to discuss the appointment of a designee or designees of Kaisa as a
director or directors of the Board of the Company subject to the approval of the Board
or at the annual general meeting of the Company, as appropriate.  This ambiguous
provision within the terms of the Acquisition has ultimately allowed Kaisa to influence
the appointment of at least five directors to the Board, listed below, as well as the
appointments of certain Kaisa affiliates to senior management positions, including
Ms. Yu Zhang as the Company's Chief Financial Officer, Mr. Wai Hang Wan, David,
her successor, and Mr. Jiabiao Wang as the Company's Chief Executive Officer.

17    Kaisa operates in the same sector as the Company being an investment holding
company principally engaged in the property development business.

## C.    REQUISITION TO CONVENE A SPECIAL MEETING

18    On 27 May 2020, IsZo released an open letter to the shareholders of the Company
[**BLS-1/161-162**] raising its concerns over the level of control over the Company
exercised by Kaisa.

19    The 27 May 2020 letter addressed issues of oppressive conduct, poor governance
and destruction of the share value at the hands of the Company's management team
and board controlled by Kaisa.

20    At the time, the board of the Company (the "**Board**") and executive leadership was
constituted as follows:

| Incumbent Director or Manager | Position | Kaisa Affiliation |
|---|---|---|
| Ying Chi Kwok | CEO and Chairman of the Board | Younger brother of Kaisa's Chairman and co-founder |
| Yu Zhang | CFO | Former financial manager at Kaisa |

| Hao Xu | Director | Vice President of Kaisa and president of Kaisa Financial Group Holdings Limited; former director of Kaisa Health Group Holdings Limited ("**Kaisa Health**") of which Kaisa owns 43% |
|---|---|---|
| Vincent Fok | Director | Board member of Kaisa Health |
| Dr. Aiping Lyu | Director | Board member of Kaisa Health |
| Professor Si Zong Wu | Director | Former instructor of the Kwok brothers (Kaisa's Chairman and Ying Chi Kwok) |
| Dr. Wing Yan (William) Lo | Director | Unknown |
| Peter Kellogg | Director | Independent |
| Mark Waslen | Director | Independent |

21   IsZo was concerned mainly with the conflict of interests that pervaded the Company at the Board level.  Five of the Company's eight directors at the time were directly affiliated with Kaisa (as shown in the table above), including the Company's Chairman and CEO being the younger brother of Kaisa's Chairman and co-founder, Ying-Shing Kwok.

22   In the letter, IsZo called for the changes to the Board, including on the following grounds:

> "*Share Price Destruction: The Company's stock price is trading at just $4.05 per share for a total market capitalization of less than $160 million as of yesterday's close—a 70% decline in share value since Kaisa replaced NTP's former CEO with Ying Chi Kwok, the younger brother of Kaisa's CEO, on January 29, 2018.*
>
> *Failure to Optimize the Company's Assets: The intrinsic value of the Company is significantly higher than the stock price reflects. Two years ago, before any pre-sales or revenue, the Company's two commercial projects had three independent valuations ranging from $2 to $3 billion, implying a share price between $15 and $23 per share. Kaisa itself purchased its shares for over $17.00 per share in July 2017. Based on raw land valuations alone, the stock should be trading higher than $20 per share. The Company has not promoted these facts in the market, let alone attempted to realize the value of the Company's assets.*"

23   Also on 27 May 2020, IsZo and certain of its affiliates (as the Reporting Persons) filed a statement on Schedule 13D with the SEC ("**Schedule 13D**") as follows [**BLS-1/163-170**]:

> "*The Reporting Persons believe the Issuer is significantly undervalued and intends to take action to increase shareholder value.  Such actions include the removal of board members of the Issuer other than two members the Reporting Persons deem independent and the election of independent directors to such vacancies.  The Reporting Persons also intend to advocate a strategic review of the Issuer's assets, including potential divestitures and outright sale of the Issuer, and develop a capital allocation strategy that maximizes the long-term value for all shareholders.  The Reporting Persons also believe that the Issuer can improve the operating income of the Issuer's performing assets in the short and long-term through a combination of cost reduction, strategic review of related-party agreements, and appropriate limits on debt financing and future capital expenditures.*"

24    Demonstrating further shareholder support to reconstitute the Board, on 16 June 2020, Railroad Ranch Capital Management LP, owning approximately 4.5% of the Shares in the Company, issued a letter of support to IsZo in which it stated that it believed that "*[…] the Board of Directors of the Company, as currently constituted, cannot not provide confidence to shareholders that their interests will be properly looked after.*" [**BLS-1/177-179**].

*Conflict of interests with Kaisa*

25    On 23 March 2020, the Company filed a Form 20-F with the SEC[1] (the "**Form 20-F**") [**BLS-1/37-160**]. The Company stated that as of 31 January 2020, it had four projects located in the Guangdong-Hong Kong-Macao Greater Bay Area and two in the Yangtze River Delta Economic Zone. The most significant were the developments in Shenzen and Hubei province, as follows:

25.1   Nam Tai Inno Park;

25.2   Nam Tai Technology Center;

25.3   Nam Tai Inno Valley; and

25.4   XiaoGao

        (together, the "**Projects**").

---

[1] https://www.sec.gov/Archives/edgar/data/829365/000156459020012102/ntp-20f_20191231.htm#B_Related_Party_Transactions

26    In the Form 20-F, the Company also disclosed its relationships and transactions with Kaisa. It stated that Mr. Ying Chi Kwok, the Chairman and Chief Executive Officer of the Company, was a co-founder and significant shareholder of Kaisa, and Hao Xu, one of the directors, was an employee of Kaisa.

27    In relation to the Projects, the Company disclosed the following involvement of Kaisa in the Projects [**BLS-1/102**]:

> "*Nam Tai Inno Park*
>
> *In April 2019, through a bidding process, we entered into a property management service agreement with Kaisa Property for the Industrial Showroom of Nam Tai Inno Park, or Inno Park, at a total consideration of RMB9.43 million for the period from April 2019 to April 2021, which covered the development stage. In April 2019, through a bidding process, we also entered into a property management service agreement with Kaisa Property under which Kaisa Property will provide property management services for the operation stage of Inno Park for the period from December 2020 to December 2025 and Kaisa Property will charge the tenants for its services. In January 2020, we entered into another preliminary property management service agreement with Kaisa Property under which Kaisa Property will provide property management services for the development stage of Inno Park for the period from January to December 2020 at a total consideration of RMB4.09 million. Our audit committee and Board of Directors have reviewed and approved our entry into these agreements.*
>
> *Nam Tai Technology Center*
>
> *In February 2020, through a bidding process, we entered into a property management service agreement with Kaisa Property for the development stage of Nam Tai Technology Center at a consideration of RMB2.69 million for the period from February 2020 to February 2021.  Our audit committee and Board of Directors have reviewed and approved our entry into these agreements.*
>
> *Nam Tai Inno Valley*
>
> *In November 2018, we entered into a property management service agreement with Kaisa Property, after Kaisa Property tendered a winning bid in*

*a tender participated by four bidders. Pursuant to the property management service agreement, Kaisa Property shall provide property management services for Nam Tai Inno Valley. Prior to the bidding, our audit committee and Board of Directors reviewed and pre-approved the circumstances for Kaisa Property's participation in the tender. The contractual amount for the property management service provided by Kaisa Property under the property management service agreement is RMB1.40 million for the period from November 2018 to November 2019. In January 2020, through a bidding process, we entered into a property management agreement with Kaisa Property for the existing buildings of Nam Tai Inno Valley at a consideration of RMB1.49 million for the period from February 2020 to February 2021. Our audit committee and Board of Directors have reviewed and approved our entry into these agreements.*

*Others*

*In November 2018, we entered into a preliminary cooperative development agreement with Kaisa XiaoGan, concerning the potential development of a digital communication base in XiaoGao, Hubei province, PRC. The agreement is preliminary in nature and provides us with a right to participate in the potential development. The agreement is valid for three years since the signing date and will automatically expire if no further agreements signed between us regarding the cooperation on branding or operation. Our audit committee and the independent members of our Board of Directors have reviewed and approved our entry into this agreement.*"

28    Whilst the Form 20-F disclosed the above and asserts that the audit committee and board have approved the transactions in relation to the Projects (a) the Board is controlled by persons connected with Kaisa who are permitted by Article 53 to vote on such transactions (b) the audit committee is similarly controlled by Kaisa, since 3 of the 5 members are connected to Kaisa; and (c) presumably Kaisa benefitted from the transactions.

29    The Form 20-F also disclosed that, on 12 February 2018, the Company sold its Hong Kong office property, reportedly in an arms-length transaction, to its former chairman, Ming Kown Koo, for $9.7 million [**BLS-1/103**].

30    On 19 March 2020, in the wake of the coronavirus, the Company purchased a land parcel located in Dongtai Village, Mayong Town, Dongguan City, Guangdong

Province, China. The consideration of the land parcel was RMB705.48 million, or $101.07 million. This sum comprised 77.6% of the cash on the Company's balance sheet as of 31 December 2019 according to the Company's Form 20-F filed on 23 March 2020.

31    Independent property appraisals of Nam Tai's properties have been stopped. The Company has not provided an independent valuation report since 10 May 2018, after providing three such reports in each of 2018 and 2017 and one such report in each of 2016, 2014 and 2013.  The importance of this is that independent checks that go to the share value have been stopped by the Board.

32    Whether as a result of these conflicts of interest or otherwise, the share price of Nam Tai has fallen from $13.00 as of 29 January 2018 when Kaisa took effective control of the Company with the announcement of the appointment of Ying Chi Kwok as Chief Executive Officer (effective 1 February 2018) [**BLS-1/21**] to $4.05 as at the close of trading on 26 May 2020 (the day before IsZo issued its first public communication to the Company's shareholders).

33    IsZo, as a significant shareholder in the Company, accordingly decided to canvass shareholder support for the reconstruction of the Board in order to implement a viable strategic plan to unlock value for all shareholders.

*Member support to convene a special meeting*

34    On 16 July 2020, IsZo, formally determined to seek member support to demand that the Company convene a meeting of members of the Company (the "**Special Meeting**").   Regulation 22 of the Articles of Association of the Company (the "**Articles**") provides as follows:

> "*The directors may convene meetings of the members of the Company at such times and in such manner and places as the directors consider necessary or desirable, and they shall convene such a meeting upon the written request of members holding more than 30 percent of the votes of the outstanding voting shares in the Company.*"

35    Also on 16 July 2020, IsZo, together with its affiliates and the Nominees (as defined below), entered into a Joint Filing and Solicitation Agreement [**BLS-1/180-183**] pursuant to which, among other things, the parties agreed to the joint filing on behalf of each of them of statements on Schedule 13D with respect to the securities of the

Company and to form a group for the purpose of soliciting written requests or proxies to: (i) request that the Company calls the Special Meeting to approve the Proposals (as defined below); and (ii) approve the Proposals at any Special Meeting called for such purpose.

36    In its Schedule 13D filed on 20 July 2020 with the SEC, IsZo disclosed that, at the Special Meeting, it would seek to [**BLS-1/189-206**]:

36.1    remove Ying Chi Kwok, Dr. Wing Yan "William" Lo, Vincent Fok, Professor Si Zong Wu and Dr. Aiping Lyu (and any new director(s) appointed by the Board of Directors since the conclusion of the 2020 Annual General Meeting of Shareholders) as directors of the Company; and

36.2    appoint Michael Cricenti, Cindy Chen Delano, Bo Hu, Leung Lin Cheong Louis (Louis Leung), Paula J. Poskon and Jeffrey Tuder (collectively, the "**Nominees**") as directors of the Company (the "**Proposals**").

37    Also on 20 July 2020, IsZo issued a letter to the shareholders of the Company (the "**20 July Letter**") seeking support to convene the Special Meeting [**BLS-1/184-188**].

38    The 20 July Letter identified the major issues with the way the Company was being run and stated, among other things, as follows:

"*We believe Nam Tai's current leadership is unwilling to divorce itself from conflicts and incapable of taking the right steps to unlock the intrinsic value of the Company's assets. The same individuals that have consistently put their own interests above those of shareholders cannot be counted on to unwind Nam Tai's web of value-destructive issues, including:*

- *Deficient Corporate Governance Under Kaisa: Kaisa, which is a conflicted minority shareholder, has packed the Board and management team with allies and family members. Not only did Kaisa's Chief Executive Officer install his younger brother – Ying Chi Kwok – as Nam Tai's Chairman and Chief Executive Officer, but more than half of the Company's Board members are directly affiliated with Kaisa or the Kwok brothers. Shareholders should not forget that the Kwok brothers have a troubling track record. In 2015, Kaisa's share price plummeted as the Shenzhen government froze its assets, resulting in a delisting from the Hong Kong exchange and the Kwok brothers fleeing to Hong Kong to escape detention by the People's Republic of China. We believe*

*a reconstituted Board with demonstrated integrity will be able to eradicate the nepotism that pervades Nam Tai today.*

- *A Controversial, Unengaged Chief Executive Officer: Ying Chi Kwok has failed to engage in any substantive manner with Nam Tai shareholders since becoming Chief Executive Officer in 2018. Mr. Kwok has not held a single conference call, engaged with sell-side analysts or presented in any public forum. To our knowledge, Mr. Kwok has seldom, if ever, visited the Company's headquarters and properties. We believe that Mr. Kwok should be made to answer to shareholders for his delinquent performance and failure to deliver any credible plan for enhancing value. We believe a reconstituted Board and qualified executive leadership team will be far better positioned to rebuild credibility with shareholders and put forth a viable corporate strategy.*

- *Chronic Financial Underperformance: Nam Tai has produced negative total shareholder returns ("TSR") over every relevant time horizon, including one-year (-58.96%), three-year (-43.75%) and five-year (-9.68%) periods.2 The Company's TSR during Ying Chi Kwok's disastrous, multi-year tenure as Chief Executive Officer is a comparably abysmal (-56.85%).3 We believe reconstituting the Board and removing Kaisa insiders from leadership roles at Nam Tai is the only way to end this dangerous and destructive tailspin.*

- *A Concerning History of Related-Party Transactions: Since Kaisa essentially took control of Nam Tai (without paying any premium), the Company has engaged in a startling number of related-party transactions. Multiple years of self-dealing has resulted in at least $2.5 million in questionable transactions. We believe a reconstituted Board that includes proven public company directors and talented legal experts will be able to investigate the full scope of Kaisa's self-dealing and establish clear guardrails to prevent similar value erosion moving forward.*

- *Egregious Strategic Missteps: Despite dramatic share price underperformance and shareholder outrage over related-party transactions, the incumbent Board has been rubberstamping a misaligned capital allocation approach. Nam Tai recently announced its intent to pursue an illogical and opaque acquisition strategy without conveying any detail to shareholders regarding anticipated costs, expected returns or the Company's investment criteria. In keeping with its disregard for shareholder communication and*

*transparency, the Company revealed in a single, buried sentence in its March 2020 20-F filing that it purchased a $101 million site for residential development in Dongguan City. This purchase used more than 80% of the Company's available cash and represents more than a third of Nam Tai's market capitalization. We believe a reconstituted Board that includes our six-member slate will be able to veer off of this disastrous path, while avoiding dangerous debt and preserving the underlying intrinsic value of revenue-generating projects.*"

39  IsZo urged the shareholders to support the reconstruction of the Board by way of electing the Nominees[2] so that the Board could benefit from a diverse, independent and highly qualified board.

40  On 5 August 2020, the Company responded to the 20 July Letter urging the shareholders to reject the Proposals [**BLS-1/207-214**]. The Company stated that:

"*The Company believes that IsZo's letters and actions demonstrate a significant misunderstanding of the Company's strategic plan and project value. Neither IsZo nor its nominees are equipped with the in-depth knowledge and extensive experience required to successfully operate large-scale industrial real estate and urban renewal projects in China. To date, IsZo has also not provided any credible plan to create further value.*"

41  In relation to the Special Meeting, the Company stated that:

"*Shareholders may need to consider whether it is necessary to convene a special meeting of shareholders to re-elect the board of directors at this critical moment; whether this action will have a negative impact on the execution of our strategy; whether your investment in the Company will be harmed as a result.*

*Nam Tai urges all shareholders to refrain from taking any action, including executing a written request for a special meeting at this time.*"

*The Requisition*

42  By a written request of members holding more than 30 percent of the votes of the outstanding voting shares in the Company, including IsZo, ("the **Requisitioning**

---

[2] Details about the Nominees can be found at https://fixntp.com/nominees/

Members") [**BLS-1/217-356**], dated 11 September 2020, the Requisitioning Members requested pursuant to Article 22 of the Company's Articles of Association and s82(2) Business Companies Act 2004 ("the **Act**") that the directors of the Company convene a meeting of the members for the purposes of putting the Proposals to a vote (the "**Requisition**").

43    The Requisition was delivered to the Company by email on 11 September 2020 directly to the Company, and to the Company's Registered Agents Maples Corporate Services [**BLS-1/386**]. A hard copy of the Requisition was delivered to Maples Corporate Services on 14 September 2020 [**BLS-1/387**].

44    Also, on 11 September 2020, IsZo issued a press release [**BLS-1/357-359**] announcing that it had delivered the Requisition to demand that the Company convene the Special Meeting at which the shareholders would have the opportunity to vote on the Proposals.

45    On the same day, Peter R. Kellogg, an independent director of the Company, together with other shareholders of the Company (representing approximately 19.08% of the shares in the Company) filed a Schedule 13D in support of the Requisition [**BLS-1/360-385**].

46    On 14 September 2020, IsZo's 11 September 2020 press release was also made public by way of a Schedule 13D filing [**BLS-1/392-407**].

*The Company's actions following the Requisition*

47    One business day following the Requisition, on 14 September 2020, the Company announced the resignation of Ying Chi Kwok from the Board and as the Chief Executive Officer of the Company and the Chairman of the Board [**BLS-1/388-391**]. However, on 21 September 2020, the Company announced the following leadership changes made by the Board [**BLS-1/408-413**], identifying in the same filing the following affiliations to Kaisa:

47.1    Dr Lai Ling Tam was appointed to the role of Executive Chairman of the Board.  Dr Tam is identified as currently serving as senior advisor to the Kaisa Group;

47.2    Jiabiao Wang was named the Chief Executive Office of the Company.  Mr Wang is identified as having been Assistant President of Kaisa Group

Shenzhen and President of Kaisa Technology Innovation Group prior to joining the Company; and

47.3 Wai Hang Wan, David, succeeded Yu Zhang as Chief Financial Officer. Mr Wan is identified as having been Vice General Manager of Kaisa Asset Management Limited before he joined the Company.

(together, the "**New Appointments**").

48 The next day, on 22 September 2020, IsZo issued a press release commenting on the Company's troubling decision in relation to the New Appointments. It pointed out that the New Appointments were all affiliated with Kaisa, which constituted a direct conflict of interest [**BLS-1/414-415**].

49 On the same day, the press release was also made public by way of a Schedule 13D filing [**BLS-1/416-429**].

50 On 23 September 2020, the Company issued its own press release in response to IsZo's statements claiming that IsZo made false allegations against the Company, including its relationship with Kaisa [**BLS-1/430-440**].

51 In relation to the alleged conflict between the Company and Kaisa, the Company responded as follows:

"*By way of background, Kaisa is listed on the main board of the Hong Kong Stock Exchange (the "HKEX") with a market cap exceeding $3.3 billion and is a large, diversified investment group in China, with competitive advantages in real estate development and urban renewal, among others. Importantly, as a large and long-term oriented shareholder, Kaisa's interests are aligned with all Nam Tai shareholders, and its relationship with Nam Tai provides the Company with not only branding advantages, but also increased access to bank financing and operational support.*"

52 In relation to the Requisition, the Company stated as follows:

"*The Company also noted that it is working with its advisors and legal counsel to evaluate IsZo's purported request to call a special meeting of shareholders and will respond in due course.*"

53    In the Company's SEC filing on 23 September 2020 [**BLS-1/430-440**], the Company sought to emphasise that it was in a strong financial position, particularly as regards to its debt position, stating as follows:

> *"As disclosed under the "Capital Resources" section of our 2019 20-F, as of December 31, 2019, Nam Tai entered into various agreements with five banks and obtained a total credit line of $298.9 million, of which $98.0 million has been withdrawn. Furthermore, with pre-leasing of the first development project of Nam Tai Inno Park underway, the Company was and is generating cash flow.  Contrary to IsZo's assertions, the Company's financial position remained strong even after the acquisition. Nam Tai's current ratio and debt ratio was 1.25X and 50.1%, respectively, as of December 31, 2019. After the successful bidding and settlement of the land payment, as of the end of June 2020, our current ratio and debt ratio were maintained at a healthy level of 1.23X and 57.5%, respectively. This reflects that this investment, as we planned, did not compromise the Company's financial conditions.*"

54    On 29 September 2020, the Company announced amendments to its Articles [**BLS-1/441-444**] effected more than a week earlier.  These amendments were effected by the Board, which is permitted to make such amendments by Regulation 14 of the Articles.

55    Whilst some of the amendments made to the Articles [**BLS-1/445-465**] are unobjectionable, the following give rise to serious concern, in that they increase the power of the current Board of Directors, with its Kaisa affiliated majority, to manipulate the Company's share capital without recourse to the general body of shareholders. In particular:

55.1    Article 3 was amended to add an express exclusion of pre-emption rights under section 46 of the Act.

55.2    Article 17 concerning the acquisition of the Company's own shares, was amended so as to expressly dis-apply sections 60, 61 and 62 of the Act. In effect, this removed restrictions in relation to the Company's ability to repurchase its own shares, leaving it free to repurchase the shares of any shareholder on such terms as may be agreed between them, and without having to make a like offer to, or seek the consent of, other members.

55.3    Article 41 was amended to increase the maximum number of directors from 8 to 9, thereby enabling the appointment of additional Kaisa affiliated directors.

56    Those members who delivered consents in support of the Requisition represented approximately 40% of the members pre 5 October 2020 (who were diluted to approximately 27% of the Shares as of 5 October 2020).  Based on conversations with other shareholders of the Company, I believe that some 54% of the members pre 5 October 2020 will support the Proposals effecting change in the Board.

57    A copy of a spreadsheet listing the Requisitioning Members is at **BLS-1/566-569**.

**D.    THE PURPORTED PRIVATE PLACEMENT**

58    On 5 October 2020 the Company, having ignored the Requisition, announced that it had completed a private placement of its common shares (the "**Purported Private Placement**") with investors Greater Sail (i.e. Kaisa) and "*an affiliate of a large-scale integrated financial group based in Hong Kong*" [**BLS-1/466-467**].

59    In fact, the Company also filed Form 6-K in which it stated as follows [**BLS-1/468-471**]:

> "*On October 5, 2020, the Company entered into a Securities Purchase Agreement (each, a "Purchase Agreement") with each of Greater Sail Ltd., a wholly owned subsidiary of Kaisa Group Holdings Ltd. ("Greater Sail") and West Ridge Investment Company Limited, an affiliate of a large-scale integrated financial group based in Hong Kong ("West Ridge"), pursuant to which the Company, in a private placement, issued and sold to Greater Sail and West Ridge 16,051,219 and 2,603,366 common shares of the Company, respectively, par value $0.01 per share (the "Shares"), at a price of $ 9.15 per Share (the "Private Placement"). The Private Placement yielded net proceeds of approximately $170 million.*"

60    As part of the Purported Private Placement, Greater Sail and West Ridge received 16,051,219 and 2,603,366 of the Company's common shares, respectively, for US$9.15 per share, which was a discount to the market share price on the NYSE as at the close of 2 October 2020, being the previous working day, of US$9.39.

61    This means that the shareholding position in the Company has changed as follows:

|  | Pre-Issuance | | Post-Issuance | |
|---|---|---|---|---|
| Kaisa/Greater Sail | 9,371,703 | 23.9% | 25,422,922 | 43.9% |
| West Ridge | Unknown | Unknown | (at least) 2,603,366 | 4.5% |
| **Total** | | | **28,026,288** | **48.4%** |

62    By its own press release dated 5 October 2020 (referred to at paragraph 58 above), the Company made clear the Board's focus on the Requisition and control of the Board in effecting the Purported Private Placement:

> *"Recently, Nam Tai's lending banks have notified Nam Tai that substantial uncertainties may be cast upon the Company's operations and management control in light of recent actions taken by IsZo Capital Management LP ("IsZo"). In fact, it is difficult for small real estate companies such as Nam Tai to obtain bank financing in China. If Nam Tai's Board of Directors were to lose its relationship with Kaisa, which would be the case if IsZo's majority slate of nominees were elected to the Board, the Company would run the risk of loans being canceled, consequently leading to significant liquidity issues with its operating and construction works. Furthermore, the requisition notice and further actions related to a potential change in control pursued by IsZo could trigger an early repayment of outstanding loans demanded by the banks under relevant loan covenants."*

> *…*

> *"IsZo's campaign has disrupted our progress, and its statements against the Company and meeting requisition have triggered this significant new risk to our financial stability. Once the Company resolves its on-going matters with IsZo, it anticipates utilizing a portion of the proceeds from this transaction to advance its property development strategy …"*

63    This true purpose of the Purported Private Placement is identified by clause 5.3 of the Securities Purchase Agreement [**BLS-1/472-504**] between the Company and Greater Sail, which is noted in the Form 6-K:

> *"Until the Voting Sunset Date, at any meeting of shareholders of the Company at which the election of any directors affirmatively nominated by the Board is submitted to a vote of the shareholders of the Company (or if action is taken*

*by written consent of shareholders of the Company in lieu of a meeting), the Investor Parties shall, with respect to each director designee nominated by the Board to serve as a Director, vote, or cause to be voted (including, if applicable, by written consent), all Shares Beneficially Owned by the Investor Entities either (at the sole discretion of the Investor Parties) (i) affirmatively in favor of the election of each director designee nominated by the Board to serve as a Director or (ii) in the same proportion that the Common Shares not Beneficially Owned by the Investor Parties are voted for or against, or abstains with respect to each director designee nominated by the Board to serve as a Director… ."*

64    It was therefore apparent from the Company's own filings that the true purpose of the Purported Private Placement was to increase the voting power of entities associated with Kaisa so as to affect the outcome of any vote concerning the composition of the Board, and with particular regard to the Requisition. In short, the purpose of the Purported Private Placement was to seek to entrench the directors associated with Kaisa.

65    It is to be noted that the Purported Private Placement could not be justified by any need for capital, because, as emphasised by the Company's SEC filing days earlier on 23 September 2020 [**BLS-1/430-440**], the Company was in a strong financial position and was unaffected by the $101 million purchase earlier in the year (see paragraph 53 above).

66    Also, in the Company's earlier press release, on 3 June 2020 [**BLS-1/171-176**], the Company indicated that it was in a good financial position , stating as follows:

"*… the new management team… has significantly improved the cost controls … and financing capabilities of the Company.*
*Stringent cost control … The drastic estimated saving of RMB 770 million (approximately $108 million) brings about substantial benefits to the Company. …*

*Strengthened financing capabilities … As of December 31, 2019, we have obtained credit lines totalling approximately RMB 2.2 billion at interest rates … which are lower than the average of non-state owned property developers in China …*".

67    Under listing standards for the NYSE, a NYSE-listed company must generally obtain shareholder approval for issuances of (i) more than 20% of the company's outstanding common stock or voting power, or (ii) more than 1% of the company's outstanding common stock or voting power to directors, officers or substantial security holders. Because the Company is a foreign private issuer, the Company is permitted to follow its home country of practice in lieu of the general NYSE standards provided that it discloses that it follows its home country practice and describes the significant differences between its home country practice and the applicable general standard.

68    The Company's Form 20-F filed on 23 March 2020 [**BLS-1/37-160**] provides that "*As a foreign private issuer with shares listed on the NYSE, we are required by Section 303A.11 of the Listed Company Manual of the NYSE to disclose any significant ways in which its corporate governance practices differ from those followed by U.S. domestic companies under NYSE listing standards. Management believes that there are no significant ways in which our corporate governance standards differ from those followed by U.S. domestic companies under NYSE listing standards.*"

69    The Company's website included the same disclosure until it was amended on 5 October 2020. The previous disclosure on corporate governance practices stated that:

> **Significant Corporate Governance Practices**
>
> As a foreign private issuer with shares listed on the NYSE, the Company is required by Section 303A.11 of the Listed Company Manual of the NYSE to disclose any significant ways in which its corporate governance practices differ from those followed by U.S. domestic companies under NYSE listing standards. Management believes that there are no significant ways in which Nam Tai's corporate governance standards differ from those followed by U.S. domestic companies under NYSE listing standards.

70    The new disclosure, as of 5 October 2020 stated as follows:

Nam Tai Property Inc. ("Nam Tai" or the "Company") is a "foreign private issuer" (as such term is defined in Rule 3b-4 under the U.S. Exchange Act), and our common shares are listed on the NYSE. Under Section 303A of the NYSE Listed Company Manual, NYSE listed companies that are foreign private issuers are permitted to follow home country practice in lieu of the corporate governance provisions specified by the NYSE with limited exceptions. The following summarizes some of the significant ways in which our corporate governance practices differ from those followed by domestic companies under the listing standards of the NYSE.

The NYSE Listed Company Manual requires that shareholder approval be obtained in certain circumstances prior to an issuance of securities to a related party or its affiliates and prior to an issuance of the securities which exceed certain thresholds. These approvals are not required under the British Virgin Islands law, our home country. We have and will continue to comply with the requirements of British Virgins Islands law in determining whether shareholder approval is required for corporate actions.

If we continue to rely on the above and other exemptions available to foreign private issuers in the future, our shareholders may be afforded less protection than they otherwise would under the NYSE corporate governance requirements applicable to U.S. domestic issuers. These risk factors will be described in our Annual Report on Form 20-F and in our Current Reports filed on Form 6-K from time to time.

71   Based on the Company's own prior public disclosure filed with the SEC, the Company's shareholders would have been entitled to expect that the Company would not have been able to proceed with a share offering of the kind carried out pursuant to the Purported Private Placement.

72   IsZo contends that the Purported Private Placement was carried out in breach of the directors' duties and for an improper purpose, and, as such, is void and should be set aside in its entirety.

73   The Purported Private Placement, which was a private placement, was carried out in favour of Greater Sail and West Ridge without any of the other existing shareholders of the Company being offered the opportunity to participate, as far as I am aware.

74   Having delayed responding to the Requisition until the Purported Private Placement had been completed, on 6 October 2020, the Company filed a Form 6-K concerning the Requisition [**BLS-1/525-529**].  The Company stated wrongly at the time of filing, "*In line with its fiduciary duties, the Board has requested additional information from IsZo to help it determine the validity of the request*".

75   Later on 6 October 2020, the Company sent a letter [**BLS-1/530-533**] to IsZo raising for the first time a series of questions relating to the Requisition including even disputing that it had been served with the Requisition on 11 September 2020 in

circumstances where the Requisition had amongst other things been emailed to the Company's registered agents on 11 September 2020, which registered agents had confirmed receipt [**BLS-1/386**].

76    The points raised in the letter of 6 October 2020 could not reasonably be considered to go to the validity of the Requisition.  They were answered by letter dated 13 October 2020 from IsZo's New York counsel, Olshan Frome Wolosky LLP ("**Olshan**") [**BLS-1/534-563**].

77    Accompanying Olshan's letter was a letter from IsZo dated  13 October 2020, [**BLS-1/562**] pursuant to which it requested that the Company provide it straight away with copies of the Company's register of members, register of directors and minutes of meetings and resolutions of members of the Company for the period after 1 January 2020.  The Company is yet to comply with those requests.

**E.    RELIEF SOUGHT**

78    By these proceedings IsZo seeks amongst other things an order avoiding the Purported Private Placement with consequential relief.

79    IsZo also seeks an order under section 86(1)(b) of the BVI Business Companies Act 2004 requiring the Special Meeting to be held. However, clearly if the Company were to proceed to hold the Special Meeting now, after having wrongfully altered the balance of votes in the Company, the Proposals seeking changes in the Board would likely be defeated.

80    IsZo's position, in short, is that it is obvious that the Purported Private Placement was prompted by the Requisition and was designed and intended to frustrate the legitimate steps taken by members to replace the Kaisa affiliated directors of the Company.

81    Accordingly, it is necessary for the issue in respect of the validity of the Purported Private Placement to be resolved first. To that end, IsZo seeks directions for a speedy trial. IsZo's position is that the directors who are the subject of the removal resolutions under the Requisition should by now already have been removed from office, and that it is only by virtue of their wrongful conduct in refusing to convene the Special Meeting in good time, and instead seeking to entrench their position by improperly issuing shares pursuant to the Purported Private Placement, that they remain in control of the Company. On any basis, it is unsatisfactory for the Company to be in a position where the status and composition of its Board is compromised as

a result of this dispute. I do not believe that it is in the interests of any of the parties or of the members for the uncertainty caused by the Purported Private Placement to persist for more than a short period of time.

82    In the meantime, IsZo seeks relief that will preserve the position pending the urgent determination of this claim.  The Company has demonstrated by its actions following the Requisition on 11 September 2020 that the relief is necessary.

83    IsZo seeks to ensure that the voting rights attached to the shares allotted pursuant to the Purported Private Placement are not exploited pending the determination of its claim, and that steps are not taken to frustrate these proceedings.

84    The Purported Private Placement itself is the most obvious illustration of this, but also pertinent are the changes to the Articles shortly after the Requisition, which changes, it may reasonably be inferred, were designed to enable the Company to exit the arrangements with Greater Sail and/or West Ridge by making repurchases of shares in due course.

85    Similarly, the appointment of three individuals affiliated to Kaisa to leadership positions shortly following the Requisition also demonstrates the determination of those in control of the Company to maintain that control.

86    Accordingly, it is appropriate for the Company, as well as Greater Sail and West Ridge, to be prevented from taking certain steps, in the first instance until the return date, including as follows:

86.1    Causing or permitting the registration of any share in the Company pursuant to the Purported Private Placement.

86.2    Causing or permitting any votes to be counted in respect of any shares purportedly allotted pursuant to the Purported Private Placement at any meeting of members of the Company.

86.3    Causing or permitting any change or step to change the Company's registered office.

86.4    Causing or permitting any amendment to the Company's Memorandum and Articles of Association.

86.5    Causing or permitting any increase or reduction in the amount of the issued share capital of the Company, the grant of any option or other interest (in the form of convertible securities or in any other form) over or in respect of its share capital, the redemption, purchase or cancellation of any of its own shares, or any other reorganisation or alteration of its share capital.

86.6    Causing or permitting any director of the Company who holds any position with, or holds any direct or indirect interest in, Greater Sail or West Ridge or any member of the Kaisa Group, or in which such director is otherwise interested in Greater Sail or West Ridge or any member of the Kaisa Group, to vote on or effect any transaction or dealings that relate to Greater Sail or West Ridge or any member of the Kaisa Group (as the case may be).

86.7    Causing or permitting the Company to enter into any transaction with any member of the Kaisa Group.

86.8    Causing or permitting the Company to enter into any transaction or series of transactions that would result in exposure for the Company to a liability in excess of US$10 million.

87    These interim measures are a reasonable and proportionate response to the egregious conduct of the Company, by the Kaisa affiliated directors, to frustrate the Requisition by making the Purported Private Placement, and thereby improperly entrench their position. They are designed to preserve the status quo immediately prior to the Purported Private Placement.

88    Further, by its letter of 13 October 2020, IsZo requested that the Company provide it with copies of the Company's register of members, register of directors and minutes of meetings and resolutions of members of the Company for the period after 1 January 2020.

89    The Company is yet to comply with those requests. In the circumstances, IsZo seeks an order requiring it to do so.

90    I also ask that the Court fix an early return date so that it may make directions for a speedy trial.

**F.   FULL AND FRANK DISCLOSURE**

91   I understand that because this application is made without notice to the Defendants IsZo is under a duty to bring to the attention of the court any matter that might affect the Court's decision on this application.

92   Given that these proceedings are at a very early stage, IsZo, in relation to certain aspects of its case, has only had the publicly available information, such as the SEC filings, to go on.

93   In particular, as matters stand, there is a lack of information concerning the position of West Ridge. Whilst it is reasonable to infer that there was an agreement to the effect that West Ridge would vote in favour of the Kaisa affiliated directors, or at least an understanding or expectation to that effect, IsZo has not had sight of the Securities Purchase Agreement entered into between West Ridge and the Company (because neither the Company nor West Ridge has disclosed the same in any public filing). Reference is made to the West Ridge Purchase Agreement referred to in the Registration Rights Agreement [**BLS-1/505-524**] among the Company, West Ridge and Greater Sail, filed on 5 October 2020 with the Company's Form 6-K SEC filing.

94   It is also correct that certain of the Company's SEC filings include statements to the effect that financial considerations were part of the justification for the Purported Private Placement.

95   Notably, the Form 6-K dated 5 October 2020 [**BLS-1/468-471**], stated that "*The Company expects the net proceeds of the Private Placement will be used for paying down debt that is at risk for cancellation or early repayment demands, and increase its financial flexibility*".

96   However, IsZo's case is that these statements do not undermine the case as to the true purpose, or at least the substantial purpose for the Purported Private Placement, as explained above.

**G.   CROSS UNDERTAKING IN DAMAGES**

97   I confirm that IsZo offers a cross-undertaking in damages as set out in the schedule to the draft order for this application.

98   I believe that IsZo is well able to meet any order that the court might make on the cross-undertaking in damages.  A copy of IsZo Capital Management LP's Form 13F-

HR dated 14 August 2020 filed with the SEC [**BLS-1/215-216**] discloses that IsZo had over US\$57 million in Section 13(f) securities as of 30 June 2020.  That position has not materially altered since then.

99   The court will note that IsZo's assets include 3,892,385 shares in the Company that are currently trading at \$5.80 per share as of market close on 12 October 2020 (compared to the \$9.39 per share the shares were trading at as of market close on the business day immediately prior to the Purported Private Placement).

## H.   SERVICE OUT OF THE JURISDICTION

100   IsZo relies on ECSC CPR 7.3(2)(a) and (b) and 7.3(7):

100.1 CPR 7.3(2)(a):

(a)   The claim form will be served in the jurisdiction on the first and second defendants, the Company and Greater Sail.  I believe that the Statement of Claim shows that there is a real issue between IsZo and the Company and Greater Sail which it is reasonable for the court to try.  Amongst other things I believe that it is clear that the Board of the Company exercised its powers for an improper purpose when effecting the Purported Private Placement and significantly affected the balance of votes in the Board's favour.  My belief is supported by amongst other things documents filed by the Company and exhibited at [***] and the result of the Purported Private Placement.

(b)   IsZo wishes to serve the claim form on West Ridge outside the jurisdiction.  West Ridge is, like Greater Sail, a purported member of the Company following the Purported Private Placement and is necessary and proper party to the proceedings since its rights will be affected by the relief sought by IsZo.

100.2 CPR 7.3(2)(b):

(a)   As set out in the Statement of Claim, IsZo seeks injunctive relief against each of the defendants to do or refrain from doing an act within the jurisdiction in that it seeks orders setting aside the allotments of shares to Greater Sail and West Ridge pursuant to the Purported Private Placement.

100.3 CPR 7.3(7):

(a)   As is apparent from the Statement of Claim, the subject-matter of the claim is the constitution, administration, management and conduct of the affairs of the Company and its ownership and control, the Company being incorporated within the jurisdiction.

101   I believe that the claim has (at least) a realistic prospect of success and that the claim falls within the CPR Part 7.3 cases on which IsZo relies.

102   I also believe that the BVI is clearly or distinctly the appropriate forum for the trial of the dispute:

102.1   Two defendants, the Company and Greater Sail, are incorporated in the BVI, IsZo is a Delaware limited partnership with its head office in New York and West Ridge is incorporated in Hong Kong.

102.2   Members of the Board who may be called as witnesses are located in the People's Republic of China, Hong Kong and the United States.  All may no doubt give evidence by video link if the court permits.

102.3   The law governing the dispute is BVI law.

102.4   The purpose of the conduct giving rise to these proceedings, the Purported Private Placement, is to retain control of the Company, a BVI company.

103   It is intended to serve West Ridge at its registered office at 22/F Li Po Chun Chambers, 189 Des Voeux RD Central, Honk Kong by personal service or in accordance with the laws of Hong Kong.

104   I ask that the periods for acknowledging service and for filing and service of a defence be abridged pursuant to ECSC CPR 26.1(2)(k), either on the hearing of this application or at the return date in respect of the Company and Great Sail, consistently with the court subsequently giving directions for a speedy trial.

## I.    CONCLUSION

105   In the circumstances, the Court is respectfully asked to grant the relief sought.

SWORN on   13 October 2020

State of New York                    )
                                     ) ss:
County of New York                   )

_Brian Sheehy_
Brian L. Sheehy

Subscribed and sworn to before me
this  13ʳᵈ  day of October, 2020.

Notary Public

My commission expires:   June  18, 2023

NGOC DUNG NGUYEN
Notary Public State of New York
No. 01NG6060216
Qualified in Queens County
Commission Expires June 18, ~~200~~ 2023

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**
**CLAIM NO. BVIHC (COM) 2020/**
**IN THE MATTER OF THE BUSINESS COMPANIES ACT, 2004**
**BETWEEN:**

**IsZo CAPITAL LP**

<u>Claimant</u>

-v-

**(1) NAM TAI PROPERTY INC.**
**(2)   GREATER SAIL LIMITED**
**(3)   WEST RIDGE INVESTMENT COMPANY LIMITED**

<u>Defendants</u>

---

**AFFIDAVIT OF BRIAN L. SHEEHY**

---



Ritter House
Wickham's Cay II
PO Box 3170
Road Town, Tortola
British Virgin Islands
Tel.: +1 (284) 852 7300
Ref.: NBC/ECS/ 180204.00002
<u>Legal Practitioners for the Claimant</u>

5557723-5